IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


EZERA K. SMITH-PHILLIP                                        Plaintiff

v.                              4:07CV00626 SWW/HDY

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                     Defendant

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

    This recommended disposition has been submitted to United States District Judge Susan Webber Wright.  The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### RECOMMENDED DISPOSITION

    Plaintiff, Ezera K. Smith-Phillip, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits.  Both parties have submitted appeal briefs and the case is ready for decision.

    The Court's function on review is to determine whether the

Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged that she was limited in her ability to work by lower back and left leg pain, numbness in her left leg and foot and

hypertension.  (Tr. 74-75, 100)  The Commissioner found that she was not disabled within the meaning of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through September 8, 2006, the date of his decision.  (Tr. 20)  On May 30, 2007, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 4-6)  Plaintiff then filed her complaint initiating this appeal.  (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is not supported by substantial evidence and that the case should be remanded.

Plaintiff was 44 years old at the time of the hearing.  (Tr. 293)  She completed the eleventh grade in school.  (Tr. 304)  She has past relevant work as a cashier, cook for a fast food restaurant, nurses' aide and manager for an ice cream store.  (Tr. 14)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i) (2006).  If the claimant is, benefits are denied, regardless of medical

condition, age, education or work experience.  <u>Id.</u> at § 404.1520(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement.  <u>Id.</u> at § 404.1520(a)(4)(ii).  If not, benefits are denied.  <u>Id.</u>  A "severe" impairment significantly limits a claimant's ability to perform basic work activities.  <u>Id.</u> at § 404.1520(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment.  <u>Id.</u>, § 404.1520(a)(4)(iii).  If so, and the duration requirement is met, benefits are awarded.  <u>Id.</u>

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made.  <u>Id.</u>, § 404.1520(a)(4).  This residual functional capacity assessment is utilized at Steps 4 and 5.  <u>Id.</u>

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work.  <u>Id.</u>, § 404.1520(a)(4)(iv).  If so, benefits are denied.  <u>Id.</u>

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  <u>Id.</u>, § 404.1520(a)(4)(v).  If so, benefits are denied; if not, benefits are awarded.  <u>Id.</u>

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 14)  He found that Plaintiff had a "severe" impairment.  <u>Id.</u>  He found that she did

not have an impairment or combination of impairments that met or equaled a Listing. Id. He judged that Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 18)

The ALJ found that Plaintiff retained the residual functional capacity for sedentary work. Id. He found that she was unable to perform her past relevant work. (Tr. 19) The ALJ correctly noted that, once Plaintiff was determined to be unable to perform her past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age, education and past work. Id. Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations, for example, assembler, drivers, sales worker and truck driver. (Tr. 18-19) Consequently, the ALJ concluded that Plaintiff was not disabled. (Tr. 19)

There is significant medical evidence in the record of Plaintiff's headaches. (Tr. 250-80) The ALJ wrote, "In June 2006, the claimant reported that she was having one headache a week instead of two to three. She was prescribed migraine medication and hopefully her headaches will subside with effective medications." (Tr. 17) Hoping for a good result and substantial evidence are not the same.

5

The ALJ also noted that a meningioma[1] was diagnosed.  (Tr. 15)
However, he did not discuss it further.  Under the circumstances, he
should have discussed it further and developed the record if that was
required.   That conclusion is bolstered by a discussion at the
beginning of the hearing between the ALJ and a medical expert, who
was testifying by telephone:

> ALJ:  . . . . Dr. Hamilton, will you tell me what the
> last exhibit number you have that's forwarded to you by my
> office?
>
> ME:  The last exhibit is 7F.  There's 18 pages on
> that.
>
> ALJ:  I suspected that was the last one.  Now since
> that time I received an additional exhibit from Baptist
> Health Neurosurgery relating to — and I can't -- I'm not
> familiar with this at all (INAUDIBLE).  A one centimeter
> left (INAUDIBLE) B A R A S A G I T T A L and (INAUDIBLE)
> M E N I N G I O M A.  Do you know what that is? I don't.
>
> ME:  Meningioma of some sort, but I can't -- I'm not
> -- is this on an MRI or something (INAUDIBLE)?
>
> ALJ:  Yes, yes, an MRI.  And the patient had also had
> (INAUDIBLE) multiple numbness with left facial numbness,
> but no arm or leg involvement.  It says rule out right
> hemispheric (INAUDIBLE).  Emergency room for MRI of the
> brain shows a tiny one centimeter left whatever that was.
>
> ME:  Meningioma.
>
> ALJ:  Now then the question -- then it went on and
> discussed the possibility of doing a surgical removal of
> that particular ill, and her blood pressure was not under
> control at that time.  States that once the hypertension
> has been controlled there is no clear cut evidence of

---

[1]"Meningiomas are benign tumors of the meninges that can compress
adjacent brain tissue.  Symptoms depend on the tumor's location.
. . . . Treatment may include excision, stereotactic radiosurgeery,
and sometimes radiation therapy." The Merck Manual 1921 (18th ed.
2006).

stroke, the patient will be a candidate for (INAUDIBLE) and removal of this particular (INAUDIBLE) and she doesn't understand all the risks and benefits.  Now it's my understanding now, Mr. Bueker that you have in with these documents you're submitting today a -- is that where the doctors have determined where they don't think they can do that?

ME:  No, Your Honor, those will be the records that we'll be submitting later.

ALJ:  Do you know -- but do you -- you don't know what the records are?  I mean that's what you understand those records will show.

ATTY:  Yes, Your Honor.

ALJ:  And you understand that the record will reflect what?

ATTY:  That they're not going to do surgery any time soon.

ALJ:  Why?

CLMT:  Control of the blood pressure.

ATTY:  Your Honor, the claimant's telling me that it's her uncontrollable blood pressure.

ALJ:  Okay, (INAUDIBLE) blood pressure, all right.

CLMT:  (INAUDIBLE).

ALJ:  Dr. Hamilton (INAUDIBLE) you would want to be asked before I proceed with questioning?

ME:  I really don't know.  This business about this meningioma may put a whole different slant on things.  It's hard for me to tell exactly what that's doing and how it's [a]ffecting her and how it might affect her capability to do work.  I don't know that I can answer some questions, any question about that based on what I've been told about it.  I think anything I say in that regard would have to be based on what I have in regard to her back alone, you know. I can't also tell about her hypertension.  It's certainly been elevated at times.  Some less than -- some normal readings and some not normal readings.  It's -

(Tr. 285-87)

Based on the preceding and the record as a whole, the Court finds that the ALJ's decision is not supported by substantial evidence.  Therefore, the ruling of the Commissioner should be reversed and the matter remanded for a reevaluation of Plaintiff's headaches and meningioma.

Accordingly, the Commissioner's decision should be reversed and remanded for action consistent with this opinion.  This would be a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991).

THEREFORE, it is hereby

RECOMMENDED that the decision of the Commissioner be reversed and this case remanded for further proceedings consistent with this opinion.

DATED this ___10___ day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE